UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANN AUSTIN                          *        CIVIL ACTION

versus                              *        NO. 06-7464

BELL SOUTH                          *        SECTION "F"


ORDER AND REASONS

Before the Court is the defendant's Motion for Summary Judgment.  For the reasons that follow, the motion is GRANTED.

Background

Ann Austin worked for BellSouth as a telephone customer service representative for 30 years, until her retirement in January 2006, at which time she received full pension.

It is the circumstances surrounding her retirement, however, that give rise to her allegations of age and disability discrimination.

Ms. Austin was a union employee with BellSouth. Initially a Services Representative, Ms. Austin eventually became a Sales Associate at the company's Call Center in Covington, Louisiana.[1] Sales Associates work strict seven and one-half hour tours, which can be scheduled day, evening, or night.

_____

[1]   The Service Representative and Sales Associate positions share many of the same duties; the main difference between the two is that Sales Associates earn a higher base wage, are evaluated based on sales, and are compensated in part through incentive programs.

1

As both a Services Rep and a Sales Associate, Ms. Austin's duties included sitting at a computer terminal to perform typing and data entry, and wearing a headset for taking phone calls from BellSouth customers.  She acted as a "telephone expert" for customers, and handled billing inquiries, complaints, and requests. Her job responsibilities also included "recommend[ing] and sell[ing] a variety of telecommunications products and/or services to meet the customer's needs."

On December 4, 2004, Ms. Austin injured her shoulder in an off-duty car accident. To make matters worse, she also suffered from a multitude of other health problems in addition to the accident injuries.  Toward the end of her tenure with the company, Ms. Austin had increasing difficulty in performing her duties.  In 2005, she acknowledged the following medical conditions: diabetes, arthritis, chronic bronchitis, depression, stress, ulcers, carpal tunnel syndrome, irritable bowel syndrome, hemorrhoids, hiatal hernia, bleeding, acid reflux, lymph node enlargement, bursitis, spurs, fluid, headaches, and hypertension.

After her car accident, she applied for short term disability benefits through the Short Term Disability plan offered to BellSouth employees.  BellSouth delegated administration of the program to a company called Broadspire, which is authorized to grant or deny initial claims for benefits under the plan and reviews, on appeal, denied claims.

2

To qualify for short term disability benefits, an employee must apply by the eighth day of their absence from work due to a certified disability.  To be eligible, the employee must show that she

> [is] disabled and...unable to perform any type of work as a result of a physical or mental illness or an accidental injury.  Any type of work includes [his or her] regular job with or without accommodations, any other participating job (regardless of availability) with or without accommodations, or temporary modified duties.

...

Ms. Austin applied for short term disability benefits in December 2004.  Broadspire denied her application, effective January 17, 2005, after which Ms. Austin filed a first level appeal on February 7, 2005.  On March 22, 2005, by letter, Broadspire advised Ms. Austin that "[t]he medical information received does not support your inability to perform any or all types of work, particularly sedentary type work, with or without appropriate accommodations....  Your providers have not given us objective medical data to support your being 'disabled' from any type of work."

Following her accident, and through the date of her resignation on January 13, 2006, Ms. Austin showed up at the Call Center on four occasions:  December 8, 2004; January 8, 2005; March 24, 2005; and December 9, 2005.  On none of these occasions, however, did Ms. Austin work the required seven and one-half hour

tour.

Having been absent from work for almost three months, and having been denied short term disability benefits, Ms. Austin showed up to work on March 24, 2005.[2]  She attempted to review her email using her left hand to operate the mouse;[3] she was unable to log on to the phone system to take calls.[4]  Unable to perform her duties,[5] about half-way through the March 24th work day, she met with her supervisor, Shawn Kelly, who was also responsible for the FMLA and sick leave procedures for her department.  Ms. Austin says that she did not discuss with Mr. Kelly the possibility of participating in the refresher training to resume her duties as sales associate "[b]ecause Mr. Kelly told me if you can't do your job, there's nothing for you to do."  Ms. Austin then took the rest of the day off as a vacation day.

Four days later, on March 28, 2005, she appealed her denial of short term disability benefits, continuing to assert that she could do no work for BellSouth and stating:

---

[2] Ms. Austin says that she went to work on this day against her doctor's orders because she needed money.

[3] She could not use her right hand because of the pain in her right shoulder and because of "bone spurs."

[4] Because she had not been working for a period of months, Ms. Austin needed to undergo a period of training, possibly one or two weeks of training, before she could resume using the computer system.

[5] Ms. Austin testified during her deposition that she was unable to perform work of any kind at this point.

4

> On 3-24-05, I went to work and I can not [do]
> my job at this time.... I have not only been
> away from work [due] to my arm, but other
> problems as well.... Please do not forget
> that I suffer with a many different things and
> have been all this time (stress, depression,
> carpa[l] tunnel both hands, IBS, reflux,
> headaches, chronic bronchitis, back pain, &
> neck pain.

Letters from Ms. Austin's treating physicians suggested that Ms. Austin had not been released back to work because of her medical situation. For example, in a letter dated April 19, 2005, one of Ms. Austin's treating physicians noted that another treating physician had "severely restricted [Ms. Austin's] activities so as to not aggravate the already inflamed joint." He recommended that she "avoid lifting greater than five pounds, no repetitive moves to include typing and writing with her right hand" and recommended that she "avoid any movement of the shoulder in any manner that forces extension of the shoulder joint. Due to these restrictions I do not believe she is able to perform her job in any satisfactory manner."

At some point in May of 2005, Ms. Austin applied for social security disability benefits, and "continued to press the company for her long term disability benefits to no avail." (She says that her claim for disability benefits is still pending).

On September 26, 2005, Ms. Austin requested a second level appeal review of the denial of plan benefits. Broadspire continued to deny her claim for disability benefits after one of its

physicians spoke with one of plaintiff's physicians (Dr. Butler) and others reviewed her case; according to the information given to Broadspire by Dr. Butler, even though he had approved Ms. Austin to return to work on a light duty basis, she had advised him that her pain was too severe and her type of work was repetitive.

In addition to seeking short term disability benefits, Ms. Austin also sought leave under the Family and Medical Leave Act; in her application, she and her physicians represented that she was unable to perform work of any kind. Ms. Austin received a leave of absence from her work, asserting the continuing and long list of maladies: severe pain, depression, stress, diabetes, chronic bronchitis, ulcers, HTN, IBS, carpal tunnel, hemorrhoids, hiatial hernia, headaches, bleeding, acid reflux, accident injuries, neck pain, ankle pain.

By letter of November 28, 2005, BellSouth manager Shawn Kelly advised Ms. Austin that she will be considered to have abandoned her job if she fails to report to work by December 9, 2005, because her claim for STD benefits had been denied due to lack of medical information substantiating disability. During a phone conversation with Mr. Kelly, Ms. Austin told him that she still could not work and that she wanted to take vacation leave. Mr. Kelly told her that she had to show up at the Call Center to sign up for vacation. On December 9, 2005, she did so.

Finally, on December 12, 2005, Ms. Austin received the very

6

least severe level of discipline, a counseling, for unsatisfactory attendance (after having not attended work for over a year). Around that same time, the local union president, Sandy Kemp, called BellSouth's Call Center Director, Suzie Conzelmann, to see if the time Ms. Austin had spent not working could count toward her 30 years' service for retirement purposes.[6]   Kemp also asked Conzelmann whether Austin could take her vacation time in order to reach her 30 years of employment; Austin's request for  Vacation and Optional Holiday time was approved.  (Ms. Kemp told Ms. Conzelmann that no grievance would be filed if Ms. Austin could get credited for 30 years of service and thus full retirement.  Ms. Austin stayed on the payroll.)

Nevertheless, plaintiff filed a grievance, signing it December 29, 2005, alleging that after she received Mr. Kelly's November 28 letter, she was denied vacation leave over the telephone and that she "was force[d] to come in from [her] sick bed....  I have been seeing all doctor[s] and trying to get back to work so I may retire."  She further stated that she was "[t]rying to get well to return [to work] so that I could retire."

In a second grievance, she alleged that she had "missed the opportunity to apply for [the retirement bonus]....   Before

---

[6] At the time of her December 4, 2004 car accident, Ms. Austin had not yet reached 30 years of service, so even though by December 2005, 30 years had since passed, Ms. Austin and Ms. Kemp were concerned that not all her time out of work would count towards her retirement.

12/31/05, I expressed my interest in retiring to Mr. Kelly.  I also asked how much time did I need to retire."

Ms. Austin confirmed in her deposition what her applications for disability benefits asserted: that she was never in a position -- from the date of her car accident on December 4, 2004 through the date of her retirement in January 2006 -- to perform her duties as a sales associate. Also, Ms. Austin never mentioned to anyone at BellSouth or the Union that, because of her many maladies, she needed accommodations in order to perform her job as a sales associate.

On January 13, 2006, Ms. Austin retired with over 30 years of service and with full retirement benefits.

But on April 4, 2006, she filed a Charge of Discrimination with the EEOC, charging that she was discriminated based on her age and disability:

> ...Beginning on or about January 15, 2005 until I retired (January 13, 2006), I was denied wages and the opportunity for short term/long term disability. On December 4, 2004, I was injured in a car accident. I have several disabling impairments and was unable to return to work.  I used my vacation days, sick days and was approved for Family Medical Leave (FMLA). My last day at work was January 8, 2005.  In March 2005, I attempted to return to my position..., but was unable to perform my job duties.  I applied for disability benefits and was denied.  During the year 2005, while I was away from my job due to my medical condition, I was denied my wages and disability benefits.  I officially retired from my position effective January 13, 2006. I believe I was discriminated against in

> violation of the Age Discrimination in
> Employment Act, and the Americans with
> Disabilities Act. I believe I was
> discriminated against because of my age, 52
> (date of birth 6/5/1953), and my
> disability(ies).

On July 10, 2006, the EEOC dismissed Ms. Austin's charges and issued her a right to sue letter.

The plaintiff sued BellSouth asserting that BellSouth discriminated against her because of her age and disabilities, in violation of the Age Discrimination in Employment Act, 42 U.S.C. § 621, and the Americans with Disabilities Act, 42 U.S.C. § 12101.

BellSouth now moves for summary judgment.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely

colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, she must come forward with competent evidence, such as affidavits or depositions, to buttress her claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A.  Age Discrimination Claim

The plaintiff does not oppose BellSouth's motion for summary judgment on this claim. Accordingly, the Court agrees with BellSouth that its motion for summary judgment should be granted as unopposed as to the plaintiff's age discrimination claim.[7]

---

[7] Only once, on page 4 of her opposition brief, does plaintiff allude to age discrimination: "Ms. Austin's position was filled by employees which were substantially younger than Ms. Austin, who was 54 at the time she retired, in lieu of termination." Plaintiff submits no evidence in support of this

B.  <u>Disability Discrimination Claim</u>

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of[8] the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge or employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   A "disability" is defined as " a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2).  A "qualified individual with a disability" is defined as an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111(8).

To prevail on an ADA claim, one must show that (1) she has a "disability"; (2) she is "qualified" for the job; and (3) an adverse employment decision was made because of her disability. <u>Rizzo v. Children's World Learning Centers, Inc.</u>, 84 F.3d 758, 763 (5th Cir. 1996).[9]

_____

stray comment.

   [8]  The Fifth Circuit recently instructed that the "motivating factor" as opposed to the "sole causation" standard is the appropriate causation standard in ADA cases.  <u>See</u> <u>Pinkerton v. U.S. Dept. Of Education</u>, 508 F.3d 207, 213 (5th Cir. 2007).

   [9]  "Once the plaintiff makes her prima facie showing, the burden then shifts to the defendant-employer to articulate a

Thus, to recover under the ADA, Ms. Austin must do more than show that she is "disabled" within the meaning of the statute. (Here, BellSouth assumes for the purposes of argument that the plaintiff is disabled.)[10]  An ADA plaintiff must also establish that she is a "qualified individual with a disability."

And that is the centerpiece of this dispute: that is, whether Ms. Austin is a person who, with or without reasonable accommodation, can perform the essential functions of her employment.  Ms. Austin asserts (vaguely at best) that there are genuine issues of material fact with regard to her "qualification" under the ADA.

"While the ADA focuses on eradicating barriers," the Fifth Circuit has held, "the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job." Foreman v. The Babcock & Wicox Co., 117 F.3d 800 (5th Cir. 1997) (quoting 29 C.F.R. § 1630, App. Background (1996)).  The ADA defines a "qualified individual with a disability" as someone

_____

legitimate, non-discriminatory reason for the adverse employment action." McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 280 (5th Cir. 2000).  "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Id.

[10] Because the parties do not dispute this issue for the purposes of summary judgment, the Court need not analyze whether the plaintiff is disabled within the meaning of the ADA.  The Court therefore assumes that the plaintiff's presumed disability is one, or some combination of all, of the various maladies plaguing plaintiff.

who has a disability but who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8); accord Giles v. Gen. Elec. Co., 245 F.3d 474, 483 (5th Cir. 2001).

The Fifth Circuit has written that an "otherwise qualified person [is] one who is able to meet all of the program's requirements in spite of his handicap". Turco v. Hoechst Celanese Corp., 101 F.3d 1090, (5th Cir. 1996) (per curiam) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993), cert. denied, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)(quoting Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979))). To defeat summary judgment on whether she is a qualified individual, therefore, Ms. Austin must under Foreman show (1) that she could perform the essential functions of the job in spite of her disability; or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job. Id.

The record overwhelmingly confirms that Ms. Austin was not qualified to perform the essential functions of her sales associate position after her December 2004 accident. Indeed, this is corroborated by her own deposition testimony, in which she stated that she was unable to perform the essential functions of her job (such as typing and data entry) from the date of her accident in

13

December 2004 through the time of her retirement in January 2006. She outlined the essential job requirements, such as using the computer for data entry, and then admitted that she could not do those things because of the extreme pain it caused her. (She could barely check her email on her computer on March 24, 2005 because she could only use her left hand for the mouse and she was in pain. She left work early because she could not do her work).

Ms. Austin suggests in her opposition that her difficulties in working would have been solved if BellSouth had provided her with a light duty assignment,[11] an adjustable keyboard, and more frequent breaks. The record evidence that accommodations would have rendered her qualified, however, is to the contrary.

By her own admission, Ms. Austin stated that she was physically unable to perform the duties of her job from the time of her accident through her retirement. Moreover, she admitted that

_____

[11] To the extent Ms. Austin is suggesting that BellSouth should have created a light duty job for her, the law does not impose such a duty. See Foreman v. The Babcock & Wilcox Co., 117 F.3d 800, 809 (5th Cir. 1997) (citation omitted). Employers are not required to create light duty jobs to accommodate disabled employees. Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995), cert. denied, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996) ("[an employer] is not required to fundamentally alter its program. Nor is the [company] required to find or create a new job for the [plaintiff]…"). As the Fifth Circuit has noted, the law does not "requir[e] affirmative action in favor of individuals with disabilities[; rather it] prohibits employment discrimination against qualified individuals with disabilities, no more and no less." Id.

14

she never requested any accommodation from anyone at BellSouth, or anyone at the Union.[12]   In fact, there is no evidence that Ms. Austin requested an accommodation, nor any evidence that any accommodation now suggested in the abstract, indeed in hindsight, would have rendered Ms. Austin qualified to perform the essential functions of a sales associate.

Furthermore, Ms. Austin's arguments in her opposition that she was qualified, with or without accommodation, belie the factual descriptions relied on by plaintiff in her efforts to secure disability benefits.

---

[12] The plaintiff bears the burden to request reasonable accommodations.  See Loulseged v. Akzo Nobel, Inc., 178 F.3d 731, 735 n.4 (5th Cir. 1999); see also Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 112 (5th Cir. 2005) (noting that it is generally the responsibility of the disabled employee to inform the employer that an accommodation is needed and that initial request trigger's the employer's obligation to participate in the interactive process) (citations omitted) .  The plaintiff does not dispute this fact.   Instead, in blatant contradiction to her sworn deposition testimony that she never requested any accommodations to assist her in performing her duties, the plaintiff asserts in her opposition brief that she requested specific accommodations from BellSouth.   There is no record evidence to support that bald assertion.   Counsel for plaintiff may be recklessly toeing the line in her argument.   In any event, a plaintiff may not create a genuine issue of material fact by submitting an affidavit or making statements which contradict her previous testimony.  See Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 136-37 n.23 (5th Cir.), cert. denied, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992).  Accordingly, there is no genuine issue of material fact as to whether the plaintiff requested reasonable accommodations.  She did not and, therefore, has failed to satisfy her burden.  "Employers cannot be expected to anticipate all the problems that a disability may create on the job and spontaneously accommodate them."  Loulseged, 178 F.3d at 736 n.4.

An ADA plaintiff who, in an application for disability benefits, asserts that she is unable to work must produce "an explanation of this apparent inconsistency" that is "sufficient" to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability.  See Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258 (5th Cir. 2001) (citing Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)).  Ms. Austin offers no "explanation" of the inconsistency between her assertions that she was disabled and unable to work (and therefore entitled to disability benefits) and her assertions now that she was qualified to perform her duties.[13]  See Giles v. Gen. Elec. Co., 245 F.3d 474,

_____

[13] She does offer the following, which can hardly be considered a sufficient explanation for the serious factual inconsistencies between, on the one hand, her avid pursuit of short term disability (and her deposition testimony confirming the accuracy of her statements made in those applications and appeals) and, on the other hand, her assertion now that she was qualified to do her job.  Ms. Austin argues in her brief that:

> If Ms. Austin's representatives seem conflicting, much of the conflict can be attributed to the misleading definitions of disability being used by the defendant.  Ms. Austin and her physicians simply tailored their responses to these company's own conflicting forms and reports.  Both Ms. Austin and her physicians were attempting to conform to the forms being provided and the definitions contained therein.

484 (5th Cir. 2001)[14] (plaintiff sufficiently explained the
assertions on his application for disability to allow a reasonable
juror to conclude that, notwithstanding his prior representations,
he is a qualified individual under the ADA; plaintiff showed that
none of the disability programs he applied for accounted for
reasonable accommodations).[15]

It is undisputed that Ms. Austin applied for short-term
disability benefits in December 2004.  To be eligible for short
term disability, the employee must show that she

> [is] disabled and...unable to
> perform any type of work as a result
> of a physical or mental illness or
> an accidental injury.  Any type of
> work includes [his or her] regular
> job with or without accommodations,
> any other participating job
> (regardless of availability) with or
> without accommodations, or temporary
> modified duties.
> ...

---

[14] The Fifth Circuit in Giles left open the issue of
"whether any unexplained inconsistencies between the unsworn
statements in [disability] applications and [a plaintiff's]
assertions in...litigation might properly form the basis for
summary judgment on the issue" because Giles's explanations
encompassed both his social security disability application and his
other benefits applications.  245 F.3d at 484 n.14.  That open
question is not, however, presented here either, simply because the
plaintiff's sworn statements in her deposition confirmed the
accuracy of the statements she made in pursuing short term
disability benefits.

[15] Unlike the plaintiff in Giles, the short term
disability benefit program here defined work as Ms. Austin's
regular job "with or without accommodations."

She continued persistently to appeal the denial of the benefits on February 7, 2005 and on March 28, 2005, asserting always that she could do no work for BellSouth and stating:

> On 3-24-05, I went to work and I can not [do] my job at this time.... I have not only been away from work [due] to my arm, but other problems as well.... Please do not forget that I suffer with a many different things and have been all this time (stress, depression, carpa[l] tunnel both hands, IBS, reflux, headaches, chronic bronchitis, back pain, & neck pain.

Ms. Austin's treating physicians submitted letters on her behalf and suggested that Ms. Austin had not been released back to work because of her medical situation. Indeed, at least one doctor recommended that she avoid lifting greater than five pounds, restricted repetitive moves, including typing and writing with her right hand, and recommended that she avoid any movement of the shoulder that forces extension of the shoulder joint; her doctor concluded that, due to these restrictions, Ms. Austin was undeniably not able to perform her job.

At some point in May of 2005, Ms. Austin applied for social security disability benefits, and "continued to press the company for her long term disability benefits to no avail." Her claim for disability benefits is still pending. On September 26, 2005, Ms. Austin requested a second level appeal review of the STD plan benefits denied effective March 25, 2005 through April 28, 2005,

and May 31, 2005.  Thereafter, when she was asked to come back to work or face the consequences of absenteeism, she said she wanted to retire.

Moreover, in her deposition testimony, the plaintiff confirmed that, in pursuing short term disability benefits, she was asserting her inability to perform her "regular job with or without accommodation."   Ms. Austin now disputes that fact in her opposition brief.  But, again, she "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting...her own previous sworn statement."  See Holtzclaw v. DSC Communications Corp., 255 F.3d 254, (5th Cir. 2001) (citing Cleveland, 526 U.S. at 806).

Rather, "[t]o defeat summary judgment, [the plaintiff's explanation of any apparent inconsistency] must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Cleveland, 526 at 807.   The plaintiff offers no sufficient explanation, and no record evidence, that would allow a reasonable juror to conclude that she could perform the essential functions of her job as a sales associate from December 2004 through January 2006, with or without reasonable accommodation.  See Reed v. Petroleum Helicopters, Inc., 218 F.3d 477, 480 (5th Cir. 2000)

19

(finding that the plaintiff made factual statements that were inconsistent with her claim that she could fly a helicopter and that plaintiff presented no evidence that any reasonable accommodation would have enabled her to fly during the periods she was on leave); cf. McClaren v. Morrison Mgmt. Specialists, 420 F.3d 457, 463 (5th cir. 2005) (plaintiff's explanation was no more than a disavowal of his previous statements related to disability claims to the social security administration; plaintiff was judicially estopped from making a prima facie age discrimination claim). Rather, the factual descriptions provided by the plaintiff and her doctors in applying for disability benefits undermine the (unsupported) assertion that she was "qualified" to work during the entire period she was applying for, or appealing the denial of, disability benefits. Further, the record establishes that she was pursuing disability benefits, and retirement, because she was physically unable to work as a sales associate due her disability that was characterized by multiple, broad symptoms of impairment.

Because the plaintiff has failed to raise a genuine issue of fact as to whether she is a "qualified" individual with a disability, she cannot make out a prima facie case of disability discrimination, and summary judgment is therefore appropriate.[16]

---

[16] The Court also notes, without deciding, that the plaintiff may not have been able to prove the third element of her claim either. The Fifth Circuit has left open the issue "whether (absent constructive discharge) an employee who quits her job may sue for loss of employment when only failure to accommodate, but no

Accordingly, the defendant's motion for summary judgment is GRANTED.  The plaintiff's claims are hereby dismissed.


New Orleans, Louisiana, January 24, 2008.


MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

adverse action is shown." <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 734 (5th Cir. 1999) (the court "proceed[ed] on the arguendo assumption that the fact that [plaintiff] quit her job does not, per se, bar her action[; h]owever, her quitting under these circumstances complicates the analysis"). Here, Ms. Austin vaguely asserts that she was forced into retirement.  But the record evidence confirms that she was not physically capable of performing her duties, and that she pursued retirement.